**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| **Tamara E. Guillebeaux** | ) | Case No. 05-83953-7 |
| Debtor. | ) ) | |

## ORDER AND OPINION

This matter came on before the court on December 21, 2006 upon Countryhouse Service Group V, Inc.'s Motion for Allowance of Claim entered on November 1, 2006. Stephanie Osborne-Rodgers appeared for the Debtor, Tamara E. Guillebeaux, Nelson G. Harris appeared for the Creditor, Countryhouse Service Group V, Inc., and Sara A. Conti appeared as Chapter 7 Trustee. Having considered the matters set forth in the pleadings and the arguments of counsel, the court finds as follows:

**Facts**

Tamara E. Guillebeaux (the "Debtor") filed a voluntary Chapter 7 petition on October 16, 2005[1] and was granted a discharge on February 6, 2006. On her Schedule A, the Debtor listed that she owned a residence in Chatham County, North Carolina with a fair market value of $260,000.00 (the "Property"). The Property was encumbered by two deeds of trust totaling $186,906.00, resulting in a net value of $73,093.67. The Debtor exempted $10,000.00 of the net

---

[1] Because this case was commenced before October 17, 2005, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") do not apply. Pub. L. No. 109-8, 1501(b)(1), 119 Stat. 23, 216 (stating that unless otherwise provided, BAPCPA does not apply to cases commenced before October 17, 2005).

value on her petition.

After the Debtor filed her voluntary petition, the Trustee began actively attempting to market and sell the Property for the benefit of the estate. On September 29, 2006, this court entered an Amended Order granting the Trustee's motion to sell the Property for a sum of $222,000.00 and transfer all liens to proceeds. According to the Debtor's petition, liens on the property included ad valorem taxes for the current tax year and prior years, a first deed of trust held by Wachovia Mortgage Corporation, and a second deed of trust held by Wachovia Bank. These liens were paid at closing. Shortly after closing, the realtor who arranged the sale of the Property was paid a sum of $13,320.00 pursuant to an Order of this court.

The last date for creditors to file claims in the Debtor's case was April 6, 2006. On November 1, 2006, Countryhouse Service Group V, Inc. ("Countryhouse") filed the instant motion, seeking to file a tardy claim. Countryhouse is a homeowners' association formed pursuant to a Declaration of Covenants and Restrictions for Fearrington Section V, the subdivision in which the Property is located. The Declaration of Covenants and Restrictions (the "Declaration") was duly recorded in the Chatham County Registry of Deeds in 1988. The Debtor was informed when she purchased the Property that she purchased it subject to the Declaration and was obligated to abide by its terms and pay yearly assessments in monthly installments to Countryhouse. However, Countryhouse was not listed on the Debtor's petition and was not, therefore, served with notice of the Debtor's filing or the sale of the Property. At the time of filing, the Debtor owed Countryhouse $628.10 for assessments and arrearages. Postpetition arrearages continued to accrue at a rate of $202.00 per month, and as of the date of sale of the Property, the Debtor owed Countryhouse $3,246.05 in assessments, arrearages, and fees. However, Countryhouse never filed a claim of lien with the Chatham County Registry of

Deeds.

Article IV, Section 7 of the Declaration provides that property owners in the Fearrington subdivision must pay "yearly assessments ratably on a monthly basis." At the hearing on the instant motion, Kimberly Parsons, the Vice President of Operations of Tallis Management Group, a corporation that owns Countryhouse and other such homeowners' associations, testified that Countryhouse uses the assessments to provide services within the Fearrington subdivision, including landscaping, street lighting, exterior home maintenance, snow removal, and enforcement of homeowners' association regulations. Supporting her testimony, Article IV, Section 2 of the Declaration states that:

> The assessments levied by the Service Group shall be used exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents in the properties and in particular for the improvement and maintenance of the properties, services including but not limited to yard maintenance, garbage pickup, and facilities such as garages devoted to this purpose and related to the use and enjoyment of the common properties and of the homes situated upon the properties including but not limited to, the payment of taxes and insurance thereon, repair, replacement, and additions thereto, reserves therefor and for the cost of labor, equipment, materials, management, and supervision thereof.

Parsons testified that even if a homeowner does not pay their assessments as they come due, Countryhouse must provide the stated services.

Countryhouse filed this motion seeking permission to file a tardy claim and asserts that it is a secured creditor of the Debtor's, since homeowners' association assessments are a continuing lien against the Property under the North Carolina Planned Community Act. N.C. Gen. Stat. § 47F-3-116 (2005). Alternatively, Countryhouse argues that it has an administrative expense claim for postpetition assessments under 11 U.S.C. § 503(b). The Debtor's attorney filed an objection on December 5, 2006, arguing that although Countryhouse was not listed as a creditor on the petition, Countryhouse had actual knowledge of the bankruptcy in February 2006

and should not be permitted to file a tardy claim.  The Debtor's attorney additionally argued that the payment of the homeowners' association assessments and arrearages should have taken place at the closing when the Property was sold, and asked the court to deny Countryhouse's motion.

After weighing the relevant evidence, this court finds that Countryhouse is allowed an administrative expense claim for postpetition homeowners' assessments and an unsecured claim for prepetition arrearages.

## Countryhouse's Tardy Claims

It is not disputed that Countryhouse filed its claim seven months after the deadline to file claims.  However, Bankruptcy Rule 9006(b)(1) permits a court to allow untimely claims if the failure to file was the result of excusable neglect.  To determine whether excusable neglect exists, a court must take "account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Pioneer Investment Services, Co. v. Brunswick Assocs.. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *In re Clock Tower Place Investments, Ltd.*, 175 F.3d 1013 (4th Cir. 1999).

Additionally, 11 U.S.C. § 503(a) provides that an entity may tardily file a request for payment of an administrative expense if permitted by the court for cause.  Neither the Bankruptcy Code nor the Bankruptcy Rules set forth a deadline for filing administrative expense claims; rather, each claim must be individually evaluated according to its circumstances.  *See, e.g.*, *In re Southern Soya Corp.*, 251 B.R. 302, 311 (Bankr. D. S.C. 2000).

Here, there are several factors that warrant a finding that excusable neglect existed, and Countryhouse's tardy claim should be allowed.  The Debtor's failure to include Countryhouse as

a creditor on her petition was not within the reasonable control of Countryhouse.  Although the Debtor's attorney asserts that Countryhouse was aware of the Debtor's bankruptcy before the time to file claims expired, Countryhouse received no actual notice of either the deadline to file claims or the Trustee's motions to sell the Property.  Because the Trustee indicated at the hearing that the Debtor and the Trustee were aware of Countryhouse's potential claim at the time of the sale of the Property but did not pay the debt to Countryhouse at closing, the risk of prejudice to the Debtor is low.  Furthermore, Countryhouse filed the instant motion approximately thirty days after the sale of the Property, which is not an unreasonable delay.  Therefore, the court, in its discretion, will allow these tardy claims.

### Administrative Expense Claim under § 503(b)

To be permitted as an administrative expense claim under § 503(b), the court must find, after notice and a hearing, that the entity claiming the administrative expense paid "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case," and that the debt arose postpetition. 11 U.S.C. § 503(b)(1)(A).  Bankruptcy courts must narrowly construe the terms "actual" and "necessary" to determine whether a creditor should be allowed an administrative expense claim. *See, e.g.*, *In re Merry-Go-Round Enters.*, 180 F.3d 149, 157 (4th Cir. 1999)*; In re Packard Props., Ltd.*, 118 B.R. 61, 63 (Bankr. N.D. Tex. 1990); *Grantham v. Eastern Marine, Inc.*, 93 B.R. 752, 754 (Bankr. N.D. Fla. 1988).  The burden of proof to demonstrate that a claim is an administrative expense is on the movant.  *In re Sinclair*, 92 B.R. 787, 788 (Bankr. S.D. Ill. 1988).

There is a split in authority regarding the treatment of homeowners' association assessments.  Some courts hold that a homeowners' association's right to payment is based on a contract theory, and thus is a pre-petition debt.  *See, e.g.*, *In re Rosteck*, 899 F.3d 694, 697 (7th

Cir. 1990); *Matter of Wasp*, 137 B.R. 71, 73 (Bankr. M.D. Fla. 1992); *In re Miller*, 125 B.R. 441, 443 (Bankr. W.D. Pa. 1991). However, the Fourth Circuit has held that homeowners' association assessments are nondischargeable, postpetition debts that arise from a covenant running with the land. *In re Rosenfeld*, 23 F.3d 833, 836-37 (4th Cir. 1994); *see also In re Lozada*, 214 B.R. 558 (Bankr. E.D. Va. 1997), *aff'd* 176 F.3d 475 (4th Cir. 1999) (holding that 11 U.S.C. § 523(a)(16), which allows a discharge of condominium fees or a share of a cooperative housing corporation unless the debtor continues to physically occupy the condominium or cooperative project, superseded *Rosenfeld* as it applied to condominium and cooperative housing association fees, but did not affect *Rosenfeld*'s treatment of other homeowner's association fees).[2] Following the Fourth Circuit in *Rosenfeld*, even though the Debtor entered into the Declaration prior to filing, the obligation to pay the billed amount to Countryhouse did not arise until the first of each month when the dues were assessed. Therefore, this is a postpetition debt.

In addition showing that a debt was incurred postpetition, the party claiming an administrative expense must also show that the expense was an actual and necessary cost of preserving the estate. 11 U.S.C. § 503(b)(1)(A). Courts have previously held that homeowners' association assessments are actual and necessary and are thus entitled to priority as an administrative expense. *See, e.g.*, *In re Packard Props.*, 118 B.R. at 64 (holding that postpetition assessments for "insurance, utilities, cable, fire alarm monitoring, landscape maintenance, and taxes benefitted all estate owners, including the Debtor's estate" and awarding an administrative expense claim to the homeowners' association that provided the services); *In re Lenz*, 90 B.R.

---

[2] Section 523(a)(16) was amended as part of BAPCPA to provide that homeowners' association assessments are also dischargeable unless the debtor continues to physically occupy the home. 11 U.S.C. 523(a)(16) (2005). However, the instant case was filed on October 16, 2005, and thus is a pre-BAPCPA case. Therefore, the new addition to § 523(a)(16) does not apply.

458, 460 (Bankr. D. Colo. 1988) (holding that "because it is through assessments that [the homeowners' association] carries out its duties under the covenants to operate and maintain the swimming pool, maintain the greenbelt and open spaces of the subdivision, and pay the property tax on common areas," the assessment charges were actual, necessary costs and expenses of preserving the estate). *But see In re Mishkin*, 85 B.R. 18, 21 (Bankr. S.D.N.Y. 1988) (holding that a homeowners association must show that assessments were used to preserve the value of the debtor's specific property, not the condominium community as a whole); *In re Butcher*, 108 B.R. 634, 638 (Bankr. E.D. Tenn. 1989) (accord). This court is persuaded that the services provided by Countryhouse, which are provided whether a property owner pays his assessments as they come due or neglects to pay, are akin to the services provided by the homeowners' associations in *In re Packard Properties* and *In re Lenz*. The exterior maintenance and common area amenities provided by Countryhouse provided a benefit to the estate by preserving the value of the home and the other homes in the community. Therefore, Countryhouse is entitled to an administrative expense claim for $2,617.95, which includes postpetition assessments, fees, and expenses.

### Countryhouse's Claim for Pre-Petition Arrearages

Although a portion of Countryhouse's claim shall be allowed as an administrative expense claim under 11 U.S.C. § 503, the $628.10 arrearage that existed at the time of the Debtor's filing arose pre-petition and is governed by §§ 501 and 502. Countryhouse argues that it is the holder of a lien that arose automatically under the Declaration and North Carolina law following the Debtor's failure to pay homeowners' association assessments as they came due. For the reasons that follow, this court does not agree.

The status of Countryhouse's purported lien is governed by North Carolina law. Because the Fearrington subdivision is a "planned community" under the North Carolina Planned

Community Act ("PCA"), perfection of Countryhouse's purported lien is governed by that statute. The PCA defines a planned community as one in which owners, by virtue of their property ownership within a community, are obligated to pay monies to a homeowners' association for the maintenance of common area real estate, as described by a declaration of covenants, other than their own lot. N.C. Gen. Stat. § 47F-1-101 (2001). The Fearrington subdivision is such a community, and thus falls under the purview of the statute. Although the PCA does not apply in its entirety to planned communities created prior to January 1, 1999, certain of its sections are applicable to communities created prior to 1999 so long as the statute is being applied to specific events and circumstances occurring on or after January 1, 1999. N.C. Gen. Stat. § 47F-1-102 (2001); *see also Wise v. Harrington Grove Comm. Ass'n, Inc.*, 584 S.E.2d 731, 735 (N.C. 2003). One such section is § 47F-3-116, which governs the perfection of a lien against an owner's property based on past due assessments. § 47F-1-102

Section 47F-1-102 of the PCA states that the sections that relate back to communities created before 1999, including section § 47F-3-116, do "not invalidate existing provisions of the declaration, bylaws, or plats and plans of [planned communities created before January 1, 1999]." The Declaration for the Fearrington subdivision states that assessments and special assessments, "together with interest, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made." It contains no provision describing the method of perfection of such a lien. Thus, § 47F-3-116 does not invalidate this section, but merely provides proper methods for Countryhouse to perfect its continuing lien on the Debtor's property and is therefore applicable to the Property and the Debtor. Furthermore, there is no dispute that the events giving rise to Countryhouse's purported lien occurred after January 1, 1999; therefore, the PCA sets forth the proper method of perfection

for Countryhouse's lien.

Under § 47F-3-116, an assessment levied against a lot that is past due for more than thirty days "shall constitute a lien on that lot when a claim of lien is filed of record in the office of the clerk of superior court of the county in which the lot is located . . . ." N.C. Gen. Stat. § 47F-3-116. Because Countryhouse never perfected its lien by filing a notice of lien with the clerk of the superior court of Chatham County or any other agency, Countryhouse's prepetition arrearage claim was never perfected under the statute. Therefore, Countryhouse is not a secured creditor with regards to the prepetition arrearage claim, but will be allowed a general unsecured claim for the prepetition arrearage in the amount of $628.10.

For the above reasons, it is ORDERED that Countryhouse be allowed an administrative expense claim in the amount of $2,617.95 and a general unsecured claim in the amount of $628.10.

## SERVICE LIST

**ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER**